UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division

| | |
|---|---|
| In re:<br>    Matthew Alan Jenkins,<br>    d/b/a Shephard Service Company,<br><br>                         Debtor. | Case No. 12-50413<br><br>Chapter 7 |
| James T. Ward, Sr., Trustee, and Linda Simpson, United States Bankruptcy Administrator,<br><br>                    Plaintiffs,<br><br>v.<br><br>Matthew Alan Jenkins,<br><br>                  Defendant. | Adversary Proceeding 12-_____ |

## COMPLAINT OBJECTING TO DISCHARGE

James T. Ward, Sr., Trustee (the "Trustee"), and Linda Simpson, Bankruptcy Administrator (the "Bankruptcy Administrator"), plaintiffs (the "Plaintiffs") complaining against Matthew Alan Jenkins, defendant (the "Defendant"), through counsel, respectfully allege as follows:

### PARTIES, JURISDICTION AND VENUE

1. The Trustee is the duly appointed trustee in the above-captioned bankruptcy case.

2. The Bankruptcy Administrator is the duly appointed United States Bankruptcy Administrator for the Western District of North Carolina.

3. This Court has jurisdiction to hear and determine this adversary proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J). Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409 in that the instant

adversary proceeding is related to the above-captioned case under title 11 of the United States Code (the "Bankruptcy Code"), which case is still pending.

4.      This is an adversary proceeding to determine Defendant's entitlement to a discharge pursuant to 11 U.S.C. § 727 and Rules 4004 and 7001(4) of the Federal Rules of Bankruptcy Procedure.

## FACTUAL BACKGROUND

5.      Defendant filed his *pro se*, voluntary petition ("Petition") for relief pursuant to chapter 7 of the Bankruptcy Code on April 11, 2012 (the "Petition Date"), initiating the above-referenced bankruptcy case (the "Bankruptcy Case"). Defendant's Petition reflected a bare-bones filing. The Bankruptcy Case was assigned to the Trustee.

6.      The only creditor that Defendant listed on the Petition was Federated Financial Corporation of America ("Federated"). Federated was awarded a judgment against Defendant on March 16, 2010 in the matter of *Federated Financial Corporation of America v. Matt Jenkins, individually and d/b/a Shephard Service Company*, Case No. 09-CVS-2084, Wake County, North Carolina, Superior Court (the "Federated Matter").[1] On April 10, 2012, The Honorable Donald W. Stephens of the Wake County, North Carolina, Superior Court, had entered an *Order to Show Cause Why Matt Jenkins Should Not Be Held in Criminal Contempt of Court and Order Forbidding Transfer of Defendant's Property* in the Federated Matter ("Judge Stephens' Order") in the Federated Matter. Exhibit A. Judge Stephens' Order indicates that the Debtor has "received close to $400,000.00 in Lawsuit Proceeds from lawsuits he has filed in North Carolina since 2008." Ex. A at 1. Judge Stephens' Order also finds that "Matt Jenkins appears to deposit the Lawsuit Proceeds [the "Lawsuit Proceeds"] in his wife's bank account in order to avoid creditors . . . ." *Id.* In addition, Judge Stephens found that "Matt Jenkins has failed and refuses

---

[1]   Defendant filed two unsuccessful appeals of that judgment.

2

to produce records from his wife's bank account or any other bank account where the Lawsuit Proceeds have been deposited." *Id.* at 1-2. Pursuant to Judge Stephens' Order, the Debtor was ordered not to "transfer any funds related to Lawsuit Proceeds received by him and deposited to any bank account or located elsewhere[.]" *Id.* at 2.

7. Defendant filed the Petition the day after Judge Stephens' Order was entered in the Federated Matter.

8. On April 17, 2012, the Debtor sent an email to the Court indicating that he had reconsidered his filing and decided to voluntarily dismiss his bankruptcy case. On April 20, 2012, the Court entered an Order providing that the Debtor's case would not be dismissed for failure to file his bankruptcy schedules, statement of financial affairs or any other required papers. (D.E. 27).[2]

9. On April 23, 2012, in response to a request from the Trustee, Defendant provided copies of his 2010 and 2011 federal and state income tax returns (the "Tax Returns").

10. On April 24, 2012, Defendant filed his bankruptcy schedules and statement of financial affairs (the "Bankruptcy Papers") in which he listed only Federated, the Internal Revenue Service, and the North Carolina Department of Revenue as creditors. Defendant amended his Bankruptcy Papers on April 30, 2012 (the "April Amendment"), adding to Schedule F an obligation in the amount of $97,500.00 to W. Andrew LeLiever ("LeLiever"), Defendant's pre-petition litigation counsel. Defendant further amended the Bankruptcy Papers on September 14, 2012 (the "September Amendment"), which amendment included, among other changes, reducing the amount of the claim scheduled for LeLiever to $56,500.00. The Bankruptcy Papers, April Amendment and September Amendment are referenced together herein as the "Amended

---

[2] The Debtor had filed a petition for relief pursuant to chapter 13 of the Bankruptcy Code on February 8, 2010, which case was subsequently dismissed for the Debtor's failure to file his bankruptcy schedules. *See* Case No. 10-50146.

3

Bankruptcy Papers."

11. According to the September Amendment, Defendant collected $226,031.33[3] in lawsuit proceeds (the "Lawsuit Proceeds") during the two years before the Petition Date. Despite his having recovered the Lawsuit Proceeds, Defendant's Amended Bankruptcy Papers indicate that he owned no real property, and that his personal property assets were valued at a total of $47,550.00 as of the Petition Date. Defendant's personal property assets include $38,500.00 in uncollected judgments (the "Judgment Assets").

12. On May 4, 2012, counsel for the Trustee sent an email to Defendant requesting that he turn over to the Trustee all files related to the Judgment Assets. Exhibit B. Defendant responded to this request by stating that he "no longer [had] any documents responsive to your request" and directing counsel to search for documentation through Pacer. Id.

13. The Amended Bankruptcy Papers do not list any legal interests in bank or other financial accounts. The Amended Bankruptcy Papers do not list any equitable or beneficial interests in bank or other financial accounts. The Amended Bankruptcy Papers do not list any funds held in trust for Defendant as of the Petition Date.

14. Defendant listed possible tort actions against 21 putative defendants and possible breach claims against an additional six putative defendants among his personal property assets (together, the "Scheduled Causes of Action"). Defendant did not provide an estimated value of the Scheduled Causes of Action. The Amended Bankruptcy Papers do not indicate addresses or other contact information for the putative defendants of the Scheduled Causes of Action.

15. After the Debtor filed the April Amendment to add a claim of $97,500.00 for LeLiever to his bankruptcy schedules, both LeLiever and Defendant indicated that this claim was overstated by a significant amount. The Debtor's September Amendment reduced the amount of

---

[3] Defendant's original Bankruptcy Papers stated that he collected $235,278.00 in Lawsuit Proceeds.

the claim for LeLiever to $56,500.00.

16. On information and belief, Defendant failed to list each of his creditors in his Amended Bankruptcy Papers. Such creditors included, on information and belief, his landlord, his cell phone service provider, providers of public utilities, and the like.

17. The Tax Returns indicate that Defendant and his spouse, Dianna Jenkins, made charitable gifts totaling $25,040.00 in 2010 and $22,680.00 in 2011. The September Amendment discloses that the Debtor made charitable gifts totaling $16,240.00 in the year before the Petition Date, April 11, 2011 through April 11, 2012.

18. On May 14, 2012, Defendant appeared for the meeting of creditors in his case (the "Creditors' Meeting") and was sworn. When questioned about the disposition of the Lawsuit Proceeds at the Creditors' Meeting, Defendant stated that "I have always said all of my income has been deposited into my wife's account. It is a marital account." Exhibit C. Defendant further testified at the Creditors' Meeting that it was his practice to direct that checks for Lawsuit Proceeds be made payable to his wife, Dianna Jenkins. *Id.*

19. Documentation provided by LeLiever and by Dianna Jenkins indicates that, in the period since the entry of the Federated Judgment, Defendant caused approximately $225,817.00 to be transferred to Dianna Jenkins (the "Transfers"). Of this amount, approximately $221,167.00 was transferred to Dianna Jenkins in the two years before the Petition Date. In the year before the Petition Date, approximately $74,566.00 was transferred to Dianna Jenkins. No Transfers to Dianna Jenkins are disclosed in the Amended Bankruptcy Papers.

20. Defendant testified that he did not have copies of any fee agreements with LeLiever. The Trustee obtained copies of contingency fee agreements from LeLiever pursuant to which LeLiever represented the Debtor in certain litigation matters. Those fee agreements

generally entitled LeLiever to 33% of any recovery obtained by the Debtor. In addition, certain of the fee agreements provide that Don Kovaleski ("Kovaleski"), who the Debtor and LeLiever have indicated is a paralegal, was to receive a contingency fee of between 15% and 18% from the Debtor. Based on the contingency fee agreements, LeLiever and Kovaleski were creditors of Defendant.

21. LeLiever is listed as a creditor in the Amended Bankruptcy Papers. Documentation provided by LeLiever indicates that in the 90 days before the Petition Date, LeLiever was paid contingency fees totaling approximately $4,640.00 from Lawsuit Proceeds. The payments made to LeLiever within 90 days of the Petition Date were not disclosed in the Amended Bankruptcy Papers.

22. Documentation provided by LeLiever indicates that in the 90 days before the Petition Date, Kovaleski was paid contingency fees totaling approximately $3,225.00 from Lawsuit Proceeds. The payments to Kovaleski within 90 days of the Petition Date were not disclosed in the Amended Bankruptcy Papers.

23. Defendant testified that the Lawsuit Proceeds were used to pay his attorney and a paralegal and to fund charitable contributions of $47,000.00 in the two years before the Petition Date. Lawsuit Proceeds also funded travel to California "at least ten times" to visit his ailing mother and to get medical treatment. *Id.* at 14.

24. Rather than adjourn the Creditors' Meeting, the Trustee elected to continue the meeting to a date when counsel for the Trustee could attend to question Defendant about, among other things, the Scheduled Causes of Action.

25. On June 13, 2012, the Debtor filed a motion to dismiss his bankruptcy case arguing that his "failure" of the means test provided in 11 U.S.C. § 707(b) required the Court to

6

dismiss his case. (D.E. 87). The Debtor scheduled the motion for hearing on June 27, 2012 but failed to appear on that date. The Court denied the motion for the Debtor's failure to prosecute it. (D.E. 108).

26. On July 19, 2012, Defendant appeared at the continued Creditors' Meeting by telephone from the United States Trustee's Office in Los Angeles, California.

27. During the continued Creditors' Meeting, Defendant testified that he does not have contact information for the putative defendants he listed in the Bankruptcy Papers. Defendant further testified that the majority of the tort claims he listed arose from phone calls placed to his cell phone or to his home without his permission, and in some cases, directed to third parties. Defendant indicated that he did not know whether or not he had recordings of any offending phone calls that may have given rise to claims against the putative tort defendants. With respect to the breach claims, Defendant testified that he suspects that the putative defendants he listed may have shared information from confidential settlement agreements with Federated's attorney.

28. With respect to Dianna Jenkins' bank accounts, Defendant testified that he was an authorized user of her checking account at Branch Banking and Trust ("BB&T"), and that he has written checks or used Dianna Jenkins' ATM card on that account (the "BB&T Account"). Defendant further testified that he accessed funds transferred to Dianna Jenkins' checking account at Wells Fargo Bank (formerly Wachovia Bank) (the "Wells Fargo Account," and together with the BB&T Account, the "Bank Accounts") through the use of Dianna Jenkins' ATM card.

29. On July 25, 2012, Defendant provided counsel for the Trustee with documentation from BB&T indicating that he is an authorized user of the BB&T Account and

7

not an owner of that account. Exhibit D. Defendant asserted in communications with counsel for the Trustee that "[s]ettlement checks paid from LeLiever to Dianna Jenkins were merely a conduit to deposit funds into the marital account. I did not lose ownership or interest in the settlement funds." Exhibit E, ¶4. Defendant also affirmatively stated in writing that the Transfers were not made in payment "for any goods or services" and were not made "for any extension of credit or money loaned . . . ." *Id.*

30. Defendant indicated that the net Lawsuit Proceeds he received totaled $226,031.33 (correcting the total for the Lawsuit Proceeds shown in the Bankruptcy Papers). *Id.*, ¶ 6. This corrected figure is reflected in the September Amendment.

31. Defendant testified that he does not remember when he first met Kovaleski other than "[i]t was a number of years ago." Exhibit F. Defendant further testified that Kovaleski is "LeLiever's paralegal." *Id.* However, LeLiever has indicated that Defendant insisted on Kovaleski's involvement with the Debtor's litigation matters. Exhibit G. According to LeLiever, he "didn't hire [Kovaleski] for [his] firm" but rather "put him in the contract" reflected in the contingency fee agreements with the statement to Defendant that "if you want to agree to paying this outside paralegal, you can." *Id.*

32. On information and belief, Defendant and Kovaleski worked together on litigation matters in which LeLiever was not involved. Plaintiff has requested documentation of Defendant's relationship with Kovaleski, including copies of emails and phone records. Defendant has stated that he does not have copies of email correspondence with Kovaleski. *Id.*, ¶ 11. As for phone records relative to calls with Kovaleski, Defendant has refused to provide those records. *Id.*

33. Absent any records of the relationship between Defendant and Kovaleski,

Plaintiff cannot determine whether Defendant and Kovaleski engaged in a partnership or whether Kovaleski was otherwise an insider of Defendant's.

34. LeLiever has disclosed that he was holding $715.70 in his trust account for Defendant's benefit as of the Petition Date. After the Petition Date, Defendant directed LeLiever to transfer those funds to Dianna Jenkins (the "Post-Petition Transfer"). Documentation of the Post-Petition Transfer is attached as Exhibit H.

35. Defendant has stated in writing that he will not amend his Bankruptcy Papers to disclose any interest in the BB&T Account, payments to creditors made within 90 days of the Petition Date, including payments to LeLiever and Kovaleski, and any Transfers to Dianna Jenkins. Ex. E.

## FIRST CAUSE OF ACTION
### Denial of Discharge – 11 U.S.C. §§ 727(c) and (a)(2)

36. Plaintiffs reallege the allegations of paragraphs 1 through 35 as though fully set out herein.

37. Section 727(a)(2)(A) provides that a bankruptcy discharge will be denied to:

> a debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under [the Bankruptcy Code], has transferred, removed, destroyed, mutilated or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed—
>
> (A) property of the debtor, within one year before the date of the filing of the petition;
> (B) property of the estate, after the date of the filing of the petition[.]

§ 727(a)(2).

38. Federated was a creditor throughout the period when the Transfers were made to Dianna Jenkins.

39. Defendant's litigation with Federated was ongoing as of the Petition Date when it

9

was stayed by operation of 11 U.S.C. § 362.

40. The Debtor's attempt to obtain dismissal of his bankruptcy case reflected his intent to hinder, delay or defraud the Debtor's creditors and the Trustee.

41. Defendant has stated that, notwithstanding the Transfers to Dianna Jenkins, he did not lose ownership or interest in the Lawsuit Proceeds that were transferred to Dianna Jenkins (the "Transferred Funds").

42. Defendant has stated that the Transfers were not made in payment for goods or services or for extensions of credit or money loaned, acknowledging that he received no value for the Transfers.

43. After making the Transfers to Dianna Jenkins, Defendant retained access to the Transferred Funds as an authorized user of the BB&T Account and through the permissive use of Dianna Jenkins' ATM cards for the Bank Accounts.

44. Defendant did not disclose an interest in the BB&T Account in his Amended Bankruptcy Papers. Defendant's failure to indicate any interest in bank accounts in his Amended Bankruptcy Papers reflected an intention to hinder, delay or defraud the Trustee and Defendant's creditors by concealing property of the estate.

45. On information and belief, Defendant treated the Transferred Funds as his own property. Defendant did not disclose an interest in the Transferred Funds in his Amended Bankruptcy Papers. Defendant's failure to disclose any interest in the Transferred Funds in his Amended Bankruptcy Papers reflected an intention to hinder, delay or defraud the Trustee and Defendant's creditors by concealing property of the estate.

46. Despite having had access to the Transferred Funds, Defendant did not satisfy the Federated Judgment.

47. The Transfers reflected transfers, removals and concealments of Defendant's property that began more than one year before the Petition Date and continued up to and through the Petition Date.

48. Defendant's retention of control over the Transferred Funds reflected a secret interest in the Transferred Funds.

49. On information and belief, Defendant intended to hinder, delay, or defraud the Trustee and Defendant's creditors, including Federated, through the transfer, removal and concealment of the Transferred Funds.

50. Defendant did not disclose in the Amended Bankruptcy Papers that, as of the Petition Date, LeLiever was holding funds in his trust account for Defendant's benefit. Defendant's failure to indicate an interest in funds held in LeLiever's trust account as of the Petition Date reflected an intention to hinder, delay or defraud the Trustee and Defendant's creditors by concealing property of the estate.

51. After the Petition Date, Defendant directed LeLiever to make the Post-Petition Transfer to Dianna Jenkins. Defendant's causing LeLiever to make the Post-Petition Transfer reflected an intention to hinder, delay or defraud the Trustee and Defendant's creditors by transferring, removing and concealing property of the estate after the Petition Date.

52. Pursuant to § 727(c) Plaintiffs may object to the granting of a discharge pursuant to § 727(a). Plaintiffs seek an Order denying Defendant a discharge pursuant to Section 727(a)(2).

### SECOND CAUSE OF ACTION
### Denial of Discharge – 11 U.S.C. § 727(a)(3)

53. Plaintiffs reallege the allegations of paragraphs 1 through 52 as though fully set out herein.

11

54. Section 727(a)(3) provides that a bankruptcy discharge will be denied if:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case[.]

55. Section 521(a)(4) requires bankruptcy debtors to "surrender to the trustee all property of the estate and any recorded information, including books, documents, records and papers, relating to property of the estate . . . ."

56. The Debtor has provided copies of his Tax Returns to the Trustee and a redacted accounting of the settlements that gave rise to Lawsuit Proceeds but has otherwise provided no records regarding property of his estate.

57. In response to a request for documentation of the Judgment Assets, Defendant stated that he no longer has such information.

58. Regarding the Scheduled Causes of Action, Defendant has indicated that he does not have contact information for the putative tort defendants. Defendant has further stated that he does not know whether or not he has recordings of offending phone calls that would support certain of the Scheduled Causes of Action.

59. Before the Petition Date, Defendant filed and settled numerous claims against other defendants alleging violations of consumer protection statutes. Defendant was, therefore, aware of the necessity of preserving recorded information that would support the Scheduled Causes of Action. Given these circumstances, Defendant's failure to maintain records supporting the Scheduled Causes of Action is not justified.

60. Defendant has stated that he does not have copies of his email correspondence with Kovaleski. Defendant has failed to preserve records of his business relationship with

Kovaleski, which failure is not justified under the circumstances of the Debtor's case.

61. Defendant has further refused to provide copies of phone records with Kovaleski. Absent any records of the relationship between Defendant and Kovaleski, Plaintiff cannot determine whether Defendant and Kovaleski engaged in a partnership or whether Kovaleski was otherwise an insider of Defendant's. Defendant's refusal to turn over to Plaintiff documentation relative to his relationship with Kovaleski is not justified under the circumstances of the Debtor's case.

62. Pursuant to § 727(c) Plaintiffs may object to the granting of a discharge pursuant to § 727(a). Plaintiffs seek an Order denying Defendant a discharge pursuant to Section 727(a)(3).

### THIRD CAUSE OF ACTION

#### Denial of Discharge – 11 U.S.C. § 727(a)(4)

63. Plaintiffs reallege the allegations of paragraphs 1 through 62 as though fully set out herein.

64. Section 727(a)(4) provides that a bankruptcy discharge will be denied if:

the debtor knowingly and fraudulently, in or in connection with the case—
(A) made a false oath or account;
(B) presented or used a false claim . . . .

§ 727(a)(4).

65. Defendant intentionally did not disclose an interest in any bank accounts in his Amended Bankruptcy Papers although he was an authorized user of Dianna Jenkins' BB&T Account.

66. Defendant intentionally did not disclose any of the Transfers in his Amended Bankruptcy Papers.

67. Defendant intentionally did not disclose an interest in the Transferred Funds in his

Amended Bankruptcy Papers although he retained access to and control over such funds.

68. Defendant intentionally omitted creditors from his Amended Bankruptcy Papers, including on information and belief, his landlord, his cell phone service provider, public utility providers and the like.

69. Defendant intentionally failed to list payments to creditors made within 90 days of the Petition Date. On information and belief, such payments included, but were not limited to, payments to LeLiever and Kovaleski.

70. Defendant's failure to disclose any interest in bank accounts, any of the Transfers, and any interest in the Transferred Funds was not the result of inadvertence.

71. Defendant's omission of certain creditors and failure to disclose payments made to creditors within 90 days of the Petition Date were not the result of inadvertence.

72. Pursuant to § 727(c) Plaintiffs may object to the granting of a discharge pursuant to § 727(a). Plaintiffs seek an Order denying Defendant a discharge pursuant to Section 727(a)(4).

WHEREFORE, Plaintiffs pray that the Court will enter an Order:

1) Denying Defendant's discharge pursuant to 11 U.S.C. § 727(a)(2); or in the alternative,

2) Denying Defendant's discharge pursuant to 11 U.S.C. § 727(a)(3); or in the alternative,

3) Denying Defendant's discharge pursuant to 11 U.S.C. § 727 (a)(4); and

4) Granting such further relief as is just and proper.

This is the 26th day of September, 2012.

/s/ A. Cotten Wright
A. Cotten Wright (State Bar No. 28162)

Grier Furr & Crisp, PA
101 N. Tryon St., Suite 1240
Charlotte, NC 28246
Phone: 704.375.3720
Fax: 704.332.0215 Fax
cwright@grierlaw.com

*Attorneys for the Trustee, James T. Ward, Sr.*


/s/ Linda W. Simpson
Linda W. Simpson (State Bar No. 12596)
402 West Trade Street, Suite 200
Charlotte, NC 28202
Phone: (704) 332-7587
Fax: (704) 344-6666
linda_simpson@ncwba.uscourts.gov

*United States Bankruptcy Administrator*

15