# EXHIBIT G

**Cotten Wright**

| | |
|---|---|
| **From:** | Matt Jenkins [shephard68@yahoo.com] |
| **Sent:** | Wednesday, July 25, 2012 6:01 PM |
| **To:** | Cotten Wright |
| **Subject:** | Re: In re Jenkins / 12-50413 |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |
| **Attachments:** | Response to Ms Wright 2nd meeting requests.doc; charitable gifts breakdown.jpg; BB&T authorization form.jpg; REDACTED SETTLEMENT BREAKDOWN.doc |

Ms Wright,
Please see the attached in response to the second meeting of the creditors

Regards,
Matt Jenkins

---

**From:** Cotten Wright <cwright@grierlaw.com>
**To:** Christopher_Badger@ncwb.uscourts.gov
**Cc:** Linda_Simpson@ncwba.uscourts.gov; Matt Jenkins <shephard68@yahoo.com>
**Sent:** Saturday, July 21, 2012 7:57 AM
**Subject:** RE: In re Jenkins / 12-50413

Chris: I am available anytime on August 7 or August 8. Thanks.

## A. Cotten Wright
Grier Furr & Crisp, PA
101 North Tryon Street, Suite 1240
Charlotte, NC 28246
704-332-0207 (direct dial)
704-332-0215 (fax)
cwright@grierlaw.com
www.grierlaw.com

This e-mail may contain confidential and attorney-client privileged material for the sole use of the intended recipient. Any review or distribution by others is strictly prohibited. If you are not the intended recipient, please contact the sender and delete this e-mail. Pursuant to IRS Circular 230, please be advised that, to the extent this communication contains any tax advice, it is not intended to be, was not written to be and cannot be used by any taxpayer for the purpose of avoiding penalties under U.S. federal tax law.

---

**From:** Christopher_Badger@ncwb.uscourts.gov [mailto:Christopher_Badger@ncwb.uscourts.gov]
**Sent:** Friday, July 20, 2012 11:33 AM
**To:** Cotten Wright
**Cc:** Linda_Simpson@ncwba.uscourts.gov; Matt Jenkins
**Subject:** Re: In re Jenkins / 12-50413

Cotten:

We could continue the hearing to 9:30AM or 2:00PM on August 7. If that doesn't work we might be able to hold the continued hearing on August 8; we are currently holding that date for another hearing but hope to know by the end of the day whether that matter will go forward on that date.

10/11/2012

Thanks,

Chris

| | |
|---|---|
| From: | "Cotten Wright" <cwright@grierlaw.com> |
| To: | <Christopher_Badger@ncwb.uscourts.gov>, |
| Cc: | <Linda_Simpson@ncwba.uscourts.gov>, "Matt Jenkins" <shephard68@yahoo.com> |
| Date: | 07/19/2012 02:58 PM |
| Subject: | In re Jenkins / 12-50413 |

Mr. Badger:

I am writing with respect to Mr. Jenkins' compliance with Judge Beyer's contempt order. Mr. Jenkins informed me earlier this week that he has moved to California. But he did appear telephonically this afternoon from the U.S. Trustee's Office in Los Angeles for the continued meeting of creditors. During the meeting, I requested certain documentation from Mr. Jenkins and asked that he have that to me by July 26, 2012. The creditors' meeting was adjourned but rather continued pending Mr. Jenkins' production of the requested documentation and the Trustee's decision to adjourn the meeting.

The contempt order provides, in part, as follows: "Should the Debtor fail to appear at a continued Creditors' Meeting or fail to cooperate in answering any questions posed and providing any information requested by or on behalf of the Trustee at the continued Creditors' Meeting, the Court will conduct a continued show cause hearing on July 23, 2012 at 2:00 p.m. EDT[.]" Because Mr. Jenkins has another week to provide the information we have requested, I am writing to suggest that the show cause hearing be continued to another date. I have copied Mr. Jenkins on this email.

Assuming that Judge Beyer would be inclined to continue the show cause hearing, I note that I will be on vacation the week of July 30th and will be back in the office on August 6th.

Thanks,
Cotten

**A. Cotten Wright**

**Grier Furr**
**& Crisp** PA
ATTORNEYS AT LAW

101 North Tryon Street
Suite 1240
Charlotte, NC 28246
704-332-0207 (direct dial)
704-332-0215 (fax)
cwright@grierlaw.com
www.grierlaw.com

This e-mail may contain confidential and attorney-client privileged material for the sole use of the intended recipient. Any review or distribution by others is strictly prohibited. If you are not the intended recipient, please contact the sender and delete this e-mail. Pursuant to IRS Circular 230, please be advised that, to the extent this communication contains any tax advice, it is not intended to be, was not written to be and cannot be used by any taxpayer for the purpose of avoiding penalties under U.S. federal tax law.

10/11/2012

10/11/2012

Ms Wright,

I am writing this in response to the requests that you had made during the second meeting of the creditors.

To begin with, the first meeting of the creditors was continued, as stated for the record by the Trustee, to allow you to question me regarding my unliquidated contingent claims since you failed to appear at the first meeting of the creditors. That was the basis for your motion requesting a second meeting and that was the basis for Judge Beyer's ensuing Order allowing a second meeting of the creditors.

In her Order I was to appear for the second meeting, which I have done, and answer questions and provide documentation as requested by you. But that Order, in context, relates to answering questions and providing documentation for my unliquidated claims. Even assuming arguendo that the Order is not that limited, this still does not give you carte blanche to make abusive and irrelevant requests. Which I believe you have done. Furthermore, as it relates to document requests, you must still be legally entitled to them before I can produce them.

For you to threaten me, during the meeting, that I am in contempt of court and that you will go directly to Judge Beyers and have her issue a contempt Order if I do not provide you with everything that you have asked for or to make changes to my schedules simply because you have chosen to redefine terms or have taken them out of context as it relates to the bankruptcy code, I believe, is grossly unethical.

To recap the meeting, you spent about 5 minutes asking me about my unliquidated claims (the basis for your motion) and then you spent approximately the following hour asking me to remember what I had written down on my schedules and statement of financial affairs.
I told you I did not remember certain things. I had no documentation in front of me to refer to but had I known I was going to be questioned about it beforehand, I could have brought those papers with me.

I will now address your requests *in seriatim*.

1.  I did not remember if I was on the lease. As it turns out, I don't believe I signed the lease. I have requested the former landlord to provide a copy of one to me, but as of this date, he has still failed to do so. The original lease from the prior year expressly stated that no security deposit was required. If I signed the renewal lease, then I will amend accordingly.

2.  I will amend the statement of financial affairs to include the contributions made to Wycliffe and the Cove Church. As far as your request for the check numbers, see the attached.

3.  There were no payments made to creditors within 90 days of filing therefore an amendment is not necessary.

Furthermore, it was inaccurate of you to state, for example, that I must list Duke power, my cable bill or my phone bills under this section. Neither Duke power, the cable company nor the phone company loans money or extends credit. They receive contemporaneous payments for services rendered the same as if I was buying groceries.

Now if I had become delinquent in paying them and had a past due bill then they would be considered creditors under this provision. However that was not the case, therefore no amendment is necessary.

4. SFA #3c- no payments were made to any insiders, therefore no amendment is necessary.

To expand further, I did not pay Dianna Jenkins for any goods or services and neither did I pay her for any extension of credit or money loaned, therefore no payments were made to Dianna Jenkins. Settlement checks paid from LeLiever to Dianna Jenkins were merely a conduit to deposit funds into the marital account. I did not lose ownership or interest in the settlement funds.

5. SFA #10- no transfers were made, therefore no amendment is necessary.

When you asked me during the meeting to list all transfers made except those made in the ordinary course of business "unless I was in the business of suing debt collectors", you intentionally omitted "or made in the financial affairs of the debtor".

Payments made to Leliever and Kovaleski were contemporaneous, non - preferential payments and additionally, were made in the" normal financial affairs of the debtor". Therefore they are not required to be listed.

Additionally no transfer was made to Dianna Jenkins within the context of this request. To expand further, settlement checks paid from LeLiever to Dianna Jenkins were merely a conduit to deposit funds into the marital account. I did not lose ownership or interest in the settlement funds.

6. SFA # 1b, I believe you are referring to SFA #2

I am unclear as to what you are requesting. To the extent that you want me to provide an itemized breakdown on the SFA form with the detailed information that you have requested, then I will politely decline to do that. The form does not request that amount of detail.

If your request is geared towards me identifying the individual settlement agreements, then I would be in violation of the settlement agreements. Your request to provide in depth detail appears to me to be an end-around Wake County's Order that Mr. Chocklett is not allowed to provide you with the settlement agreements.

However, in an attempt to provide you with the information requested, please see the attached wherein I have redacted the defendant's names. If this is insufficient, then please clarify your request. Please note, the net amount should be $226,031.33 not $235,278.00.

7. See the attached BB&T signature card.

8. I am not the owner of the BB&T account, therefore no amendment is necessary.

Furthermore, for you to argue with me at the meeting and insist that I am an account owner by virtue of being on a signature card as an authorized user for the account is still incorrect. For example, an authorized user of a credit card is not automatically the account owner. In any case, see the attached letter from BB&T that was entered into evidence in the Federated matter establishing that I was not the account owner but merely an authorized user.

9. The $ 4020.00 deposit was Dianna Jenkins reimbursement check from the auto insurance company. A copy of that check was provided to the Trustee at the first meeting of the creditors on May 14, 2012. I believe the $ 500.00 deposit made on April 9th was Dianna Jenkins depositing her cash into her account.

10. As it turns out, the $97,000.00 estimated to be owed to Mr. Leliever was too high.

The first Federated appeal was $25,000.00, the second appeal was $15,000.00, defense of the Citibank claim was $10,000.00, defense in the criminal contempt hearing was $5,000.00, his portion of the NSB settlement, which you are holding in trust, is $1500.00.
A lesser amount is owed than what is scheduled due to my mistaken belief that Mr. Leliever was owed more money for the state court proceedings dealing with Federated and that my agreement with him against GC Services was an hourly agreement rather than a contingency agreement. I will amend this on the schedule.

11. There is absolutely no relevant or legal basis for your request to provide you with copies of all emails and phone records for my personal discussions with Don Kovaleski.
Furthermore, to the extent that any of those communications took place relating to my litigation, they would be protected by the attorney client privilege as he was under the employ of Mr. Leliever.
Additionally, I am not in possession of any emails between myself and Mr Kovaleski and the production of phone records is oppressive, unduly burdensome, costly, harassing and completely irrelevant therefore I politely decline to provide you with such.

12. My wife and minor daughter reside at:
3638 Del Amo Blvd. Lakewood Ca. 90712.

Aaron Jenkins resides at 14833 Mansa Dr. LaMirada Ca. 90638


Regards,
Matt Jenkins

SETTLEMENT FROM 4/12/10 – 4/11/12 BREAKDOWN:

## W.D.N.C.

| DEFENDANT | GROSS | COUNSEL | PARALEGAL | FILING/DEPO COST | NET |
|---|---|---|---|---|---|
| | 35,000.00 | 10,860.20 | 0 | 1,155.80 | 22,984.00 |
| | 66,000.00 | 19,500.00 | 10,100.00 | 350.00 | 36,050.00 |
| | 12,000.00 | 4,000.00 | 0 | 150.00 | 7,850.00 |
| | 11,500.00 | 3,300.00 | 1960.00 | 350.00 | 5,890.00 |
| | 24,000.00 | 7092.00 | 4,211.00 | 350.00 | 12,347.00 |
| | 20,000.00 | 6,210.00 | 3001.00 | 350.00 | 10,439.00 |
| | 18,500.00 | 0 | 0 | 350.00 | 18,150.00 |
| | 50,000.00 | 0 | 0 | 350.00 | 49,650.00 |
| | 10,150.00 | 0 | 0 | 150.00 | 10,000.00 |
| | 7,500.00 | 0 | 0 | 350.00 | 7,150.00 |
| | 8,650.00 | 0 | 0 | 350.00 | 8,300.00 |
| | 3,250.00 | 0 | 0 | 0 | 3,250.00 |
| | 12,000.00 | 0 | 0 | 350.00 | 11,650.00 |
| | 5001.00 | 0 | 0 | 350.00 | 4,651.00 |
| TOTAL | 283,551.00 | 50,962.20 | 19,272.00 | 4,955.80 | 208,361.00 |

## E.D.N.C.

| DEFENDANT | GROSS | COUNSEL | PARALEGAL | FILING/DEPO COST | NET |
|---|---|---|---|---|---|
| | 11,000.00 | 3,150.00 | 1,871.00 | 350.00 | 5,629.00 |
| | 7,000.00 | 1,950.00 | 1,158.00 | 350.00 | 3,542.00 |

## N.D. OHIO

| DEFENDANT | GROSS | COUNSEL | PARALEGAL | FILING/DEPO COST | NET |
|---|---|---|---|---|---|
| | 8,250.00 | 2,280.00 | 1,354.00 | 350.00 | 4,266.00 |

## WAKE

| DEFENDANT | GROSS | COUNSEL | PARALEGAL | FILING/DEPO COST | NET |
|---|---|---|---|---|---|
| | 4,000.00 | 1,140.00 | 0 | 150.00 | 2,710.00 |

## IREDELL

| DEFENDANT | GROSS | COUNSEL | PARALEGAL | FILING/DEPO COST | NET |
|---|---|---|---|---|---|
| | 2,510.00 | 836.67 | 0 | 150.00 | 1,523.33 |

OVERALL TOTAL     $226,031.33

Confidential - For Internal Use Only
Account # / Tax Id: ▓▓▓▓▓440

07/24/2012
1

## ACCOUNT AUTHORIZATION/REVOCATION
(Personal Accounts)

### ACCOUNT AUTHORIZATION

Client's Name  Dianna Lee Jenkins
Account Type  DDA   Account Number  ▓▓▓▓0440
To: BB&T
I/We do hereby authorize  Matt Jenkins
whose signature appears below, to conduct transactions on my/our account, including credit lines, and to have access to any such account through ATM, BB&T OnLine and Phone24. The authorized signer is not an account owner.

This authorization shall remain in force until revoked by any one account owner, by a duly appointed Attorney-in-Fact of an account owner, or by a court-appointed Guardian or Conservator for an account owner. I/We agree not to bring any claims of unauthorized transactions against BB&T arising out of or relating to this account authorization.

6055801/ Morrison Plantation
Profit Center/Location

L. Gambill
Prepared By

Authorized Signer Signature

08/06/2007
Date

Client's Signature

### ACCOUNT AUTHORIZATION REVOCATION

TO: BB&T

Date                Account Number

I, _____, hereby revoke the Account Authorization granted to _____ on the above-referenced account. I acknowledge that this revocation will become effective within a reasonable time after receipt by BB&T.

Profit Center/Location

Prepared By                Client's Signature

(Rev. 12/07/06)

| DATE | CHARITY | AMOUNT | CHECK NO. |
|---|---|---|---|
| 1/30/2012 | WYCLIFFE | $450.00 | 1445 |
| 3/27/2012 | WYCLIFFE | $150.00 | 1449 |
| 4/12/2011 | WYCLIFFE | $1,650.00 | 1362 |
| 4/29/2011 | WYCLIFFE | $150.00 | 1381 |
| 6/2/2011 | WYCLIFFE | $150.00 | 1389 |
| 6/30/2011 | WYCLIFFE | $150.00 | 1401 |
| 8/9/2011 | WYCLIFFE | $150.00 | 1410 |
| 8/30/2011 | WYCLIFFE | $150.00 | 1414 |
| 10/7/2011 | WYCLIFFE | $150.00 | 1419 |
| 11/8/2011 | WYCLIFFE | $150.00 | 1428 |
| 3/22/2012 | COVE CHURCH | $760.00 | 1450 |
| 4/2/2012 | COVE CHURCH | $1,360.00 | 1451 |
| 4/12/2011 | COVE CHURCH | $360.00 | 1373 |
| 5/24/2011 | COVE CHURCH | $660.00 | 1385 |
| 6/23/2011 | COVE CHURCH | $2,700.00 | 1393 |
| 8/2/2011 | COVE CHURCH | $360.00 | 1404 |
| 10/24/2011 | COVE CHURCH | $5,200.00 | 1424 |
| 12/19/2011 | COVE CHURCH | $1,540.00 | 1439 |