UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division

| | |
|---|---|
| In re:<br>    Matthew Alan Jenkins,<br>    d/b/a Shephard Service Company,<br><br>                         Debtor. | Case No. 12-50413<br><br>Chapter 7 |
| James T. Ward, Sr., Trustee, and Linda Simpson, United States Bankruptcy Administrator,<br><br>                         Plaintiffs,<br><br>v.<br><br>Matthew Alan Jenkins,<br><br>                         Defendant. | Adversary Proceeding 12-3223 |

**PLAINTIFF'S REPLY TO DEBTOR'S OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

Plaintiffs James T. Ward, trustee (the "Trustee") for Matthew Alan Jenkins (the "Debtor" or the "Defendant"), and Linda Simpson, the United States Bankruptcy Administrator (the "Bankruptcy Administrator," and together with the Trustee, the "Plaintiffs"), hereby present this *Reply* to the Debtor's Opposition[1] to their Motion for Summary Judgment (the "Motion").

### I.    THE COMPLAINT WAS TIMELY FILED

The Opposition argues that the Complaint[2] in this Adversary Proceeding was not timely. Opp. at 3-5. A review of the record in the Debtor's case indicates otherwise.

---

[1] The Debtor captioned his Opposition as an objection to the Trustee's Motion for Summary Judgment; in fact, the Motion was a joint motion by the Plaintiffs in this adversary proceeding (the "Adversary Proceeding"). *See* D.E. 16.

[2] Capitalized terms not defined herein are defined in the Plaintiffs' *Brief in Support of Motion for Summary Judgment* (the "Brief"), D.E. 11.

On July 2, 2012, the Court granted a joint motion by the Plaintiffs and entered an Order that provided that "the deadline for any party in interest to bring an objection to discharge or dischargeability in this case is extended through and including sixty (60) days after the meeting of creditors pursuant to 11 U.S.C. § 341 has been adjourned." Bankr. D.E. 125. Also on July 2, 2012, the Court ordered the Debtor to appear at a continued meeting of creditors on July 11, 2012 and provided that a show cause hearing would be conducted that same day in the event that the Debtor failed to appear. Bankr. D.E. 126. After the Debtor did not appear for the creditors' meeting or the show cause hearing on July 11th, the Court entered an Order finding the Debtor in contempt but providing that he could purge his contempt by attending a continued meeting of creditors on one of two alternate dates. Bankr. D.E. 129. Thereafter, the Debtor appeared by telephone at a continued meeting of creditors on July 19, 2012 (the "Continued Creditors' Meeting").

The Continued Creditors' Meeting was not adjourned on July 19, 2012. Instead, as the transcript of the Continued Creditors' Meeting indicates, the attorney for the Trustee explained that the meeting would be continued, stating for the record:

> Mr. Jenkins, I am not going to conclude the meeting today. I am going to talk with the trustee and, if he determines that we can adjourn the meeting, we will file a notice of that, but officially the meeting is continued.

Exhibit R. Also on July 19, 2012, counsel for the Trustee sent an email to Judicial Law Clerk, Christopher Badger stating that "[t]he creditors' meeting was [not] adjourned but rather continued pending Mr. Jenkins' production of the requested documentation and the Trustee's decision to adjourn the meeting." Br., Ex. G at 3. That the Debtor received this email is beyond question given that he responded to it on July 25, 2012. *See id.*

2

On August 7, 2012, the attorney for the Trustee announced in open court that the Debtor had substantially complied with the Court's order to appear for at the Continued Creditors' Meeting. This announcement was noted in a text entry on the docket report on that date as indicated on the attached Exhibit S at 15. That text entry does not state that the Continued Creditors' Meeting was adjourned or concluded.

As of the date of the Complaint, September 26, 2012, no entry had been made on the docket in the Debtor's bankruptcy case that would indicate that the meeting of creditors has been adjourned or concluded, and the Debtor had not been served with any notice of an adjournment. *See id.* Accordingly, the 60-day period provided for in the Court's July 2, 2012 Order had not run on the date that this Adversary Proceeding was filed; therefore, the Complaint was timely.

## II. THE DEBTOR HAS NOT RAISED A GENUINE DISPUTE AS TO ANY MATERIAL FACT

The *Debtor's Response to Trustee's Introduction and Statement of Uncontroverted Facts Contained Within Trustee's Motion for Summary Judgment* ("Response to Facts"), attached as Exhibit A to the Opposition, includes a denial that the Debtor transferred funds to his wife, Dianna Jenkins. Opp., Ex. A, Resp. to Facts, ¶ 1. Likewise, the Debtor's *Declaration of Matthew A. Jenkins Pursuant to 28 U.S.C. § 1746* (the "First Declaration") included in Exhibit B to the Opposition and his *Declaration of Matthew A. Jenkins Pursuant to 28 U.S.C. § 1746* (the "Second Declaration"), attached as Exhibit C to the Opposition, also include denials that the Debtor disposed of any interest in his Lawsuit Proceeds that were deposited to Dianna Jenkins' Bank Accounts as well as denials that his wife exercised dominion or control over his Lawsuit Proceeds. Opp., Ex. B, First Decl., ¶¶ 4-6; Ex. C, Second Decl., ¶¶ 4-6. Although framed as denials of fact, these assertions are legal arguments that turn on whether a deposit to a bank account constitutes a transfer within the meaning of that term under the Bankruptcy Code's

3

definition in 11 U.S.C. § 101(54)(D).[3] The Debtor also denies his record testimony as it appears in the transcript excerpt attached as Ex. H to the Plaintiffs' Brief and argues in the Opposition that he "had only one creditor." Opp. at 6; Ex., A, Resp. to Facts, ¶ 5. While the transcript speaks for itself, so do the Debtor's Bankruptcy Papers and Amended Bankruptcy Papers in which he lists the Internal Revenue Service, the North Carolina Department of Revenue, and LeLiever as creditors—contradicting his assertions that Federated is his "only" creditor. *See* Exhibit T at 12;[4] Exhibit U at 7, Exhibit V at 4. Because these denials by the Debtor either turn on legal issues or are contradicted by the Debtor himself, none raises a dispute as to a material fact.

In his Response to Facts, the Debtor disputes that Ex. L to the Brief supports the statement that the Debtor insisted on Kovaleski's involvement with his litigation matters. Opp., Ex. A, Resp. to Facts, ¶ 6. Attached here as Exhibit W is the actual source of that statement, comments made by LeLiever at the July 23, 2012 hearing in the Debtor's Bankruptcy Case as reflected in the transcript. Ex. T at 18, 25.

Additional assertions by the Debtor are addressed below.

### III. THE DEBTOR'S LEGAL ARGUMENTS ARE UNAVAILING

**A. The Debtor's Arguments As to His Intent Relative to 11 U.S.C. § 727(a)(2) Lack Credibility When Compared to His Pre-Petition Actions.**

The Debtor argues that he intended to pay the Federated Judgment; therefore, Plaintiffs' claim pursuant to § 727(a)(2) fails for lack of a showing of intent. Opp. at 6-7. The Debtor has not challenged Plaintiffs' showing on the remaining elements of a § 727(a)(2) claim as set out in the Plaintiffs' Brief. *See id.* at 5-7.

---

[3] The legislative history relative to § 101(54)(D) states that a deposit to a bank account meets the Bankruptcy Code's definition of a transfer. *In re Pulliam*, 279 B.R. 916, 920 (Bankr. M.D. Ga. 2002) (quoting S.Rep. No. 95-989, 95th Cong. 2d Sess. 27 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5813).
[4] Counsel has numbered the pages in Ex. T for the Court's convenience.

4

There is no credible evidence that would demonstrate that the Debtor intended to do anything other than hinder, delay, and—by transferring his Lawsuit Proceeds to his wife—defraud Federated. In the Opposition and the exhibits thereto, the Debtor alleges that he offered to make payments on the Federated Judgment but that Federated would not agree to a payment plan. Opp. at 3, 7; Ex. B, First Decl., ¶¶ 8-11; Ex. C, Second Decl., ¶¶ 8-10. The Debtor has testified that:

> after the hearing with Judge [Stephens] on April 10th, my counselor talked with the attorney for Federated, not Chocklett but [Jon] Player who represents [Federated] in the federal case, and tried to work out a payment plan. Again, for the last time, he told him, 'Look, if you are not willing to take payments, my client is going to go down and file a chapter 7.' And he said, no, his client wants a lump sum, they don't want payments, and so – I mean that's where we are at. If Federated would have taken payments or was still, you know, open to taking payments, then there is maybe something I could work out and there is no other creditors.

Br., Ex. H. at 9-10. However, the Debtor's assertions are not supported by any contemporaneous documentary evidence such as copies of correspondence indicating Federated's refusal of a payment plan or return of partial payment. *See* Opp., Ex. B, First Decl., ¶¶ 8-11; Ex. B, LeLiever Decl., ¶¶ 3-5; Ex. C, Second Decl., ¶¶ 8-10. Absent such support, the Debtor's self-serving statements and those of his attorney are of little evidentiary value.

Moreover, these statements are belied by the Debtor's actions during the period between the date that the Federated Judgment was entered, March 16, 2010, and the Petition Date. *See Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 91 (5th Cir. 1989) (explaining that a debtor's actual intent may be inferred from the actions of the debtor and may be proven by circumstantial evidence). The timeline below shows the Debtor's activities after entry of the Federated Judgment, shedding light on his actual intent.

5

|     | **Date**   | **Events and Actions** |
|-----|------------|------------------------|
| a.  | 3/16/2010  | Federated Judgment was entered. Br., Ex A |
| b.  | 3/31/2010  | Debtor filed his motion to set aside Federated Judgment. *Federated Fin. Corp. of Am. v. Jenkins*, __ N.C.App. __, 719 S.E.2d 48, 51 (N.C.App. 2011), attached as Exhibit X. |
| c.  | 6/29/2010  | Trial court entered an order denying the Debtor's motion to set aside the Federated Judgment. *Id.* |
| d.  | 7/28/2010  | Debtor filed notice of appeal of order denying motion to set aside Federated Judgment. *Id.* |
| e.  | 12/1/2010  | Debtor signed Flat Fee Agreement agreeing to pay LeLiever $25,000.00 to pursue appeals in Federated Matter, a copy of which is attached as Exhibit Y. |
| f.  | 2/25/2011  | Order is entered in Federated Matter requiring Debtor to produce documents relating to his assets. *Federated Fin. Corp. of Am. v. Jenkins*, __ N.C.App. __, 721 S.E.2d 409, *1 (N.C. App. 2012), attached as Exhibit Z. |
| g.  | 4/1/2011   | Debtor signed Flat Fee Agreement agreeing to pay LeLiever $15,000.00 to pursue appeal of Order requiring him to produce documents relating to his assets, a copy of which is attached as Exhibit AA. |
| h.  | 9/6/2011   | N.C. Court of Appeals affirmed Order denying the Debtor's motion to set aside the Federated Judgment. Ex. X at 48. |
| i.  | 9/21/2011  | Debtor filed a complaint in U.S. District Court, Exhibit BB, alleging that Federated and its attorney had violated consumer protection statutes in their efforts to collect the Federated Judgment, captioned as *Jenkins v. Federated Financial Corp. of America & Gregory P. Chocklett*, initiating Case No. 5:11-CV-00496-F, E.D.N.C. |
| j.  | 11/9/2011  | N.C. Court of Appeals heard the Debtor's appeal of the Order requiring Debtor to produce documents relating to his assets. Ex. Z at *1. |
| k.  | 1/17/2012  | N.C. Court of Appeals affirmed Order requiring Debtor to produce documents relating to his assets. *Id.* at *3. |

l. 4/10/2012 Judge Stephens' Order was entered ordering the Debtor to appear before the court on April 12, 2012 and to "bring with him all bank records from his wife's bank account and any other bank account that he has deposited funds to since January 1, 2008." Br., Ex B at 2.

m. 4/10/2012 Debtor's attorney conveyed the Debtor's offer to make payments toward the Federated Judgment to Jon Player. Br., Ex. H at 9-10.

n. 4/11/2012 Debtor filed his Petition listing Federated as his only creditor.[5] Bankr. D.E. 1.

As shown above, the Debtor vigorously resisted Federated's collection efforts, including its efforts to obtain information about the disposition of the Debtor's Lawsuit Proceeds. Meanwhile, the Debtor obligated himself to pay LeLiever as much to appeal the Federated Judgment and related orders as the amount of that judgment itself.[6] But the most telling indication of the Debtor's intent as to Federated is the fact that he mounted a collateral attack against Federated in United States District Court just 15 days after losing his appeal of the Federated Judgment and within one year of the Petition Date. *See* Ex. Y.

Meanwhile, during the year before the Petition Date, the Debtor caused as much as $64,566.00 in Lawsuit Proceeds to be deposited to bank accounts held solely in the name of his wife—enough to satisfy the Federated Judgment (or to pay LeLiever) with change to spare. *See* Br., Ex. P. In sum, the steps taken by the Debtor, both in the year before the Petition Date and prior to that period, reflect objective evidence of his actual intent to hinder, delay or defraud his creditors in the year before the Petition Date. The Debtor has not raised a disputed question of material fact that would preclude entry of summary judgment as to Plaintiffs' claim pursuant to § 727(a)(2); therefore, Plaintiffs are entitled to judgment on that claim.

---

[5] In his Bankruptcy Papers filed on April 24, 2012, the Debtor listed a claim for $40,000.00 for Federated on his Schedule F. Ex. T at 13.

[6] As indicated in the Debtor's Amended Bankruptcy Papers, he did not pay LeLiever for his services. Ex. U at 7; Ex. V at 4.

B. **The Debtor's Arguments Demonstrate that His Bankruptcy Papers and Amended Bankruptcy Papers Reflect False Oaths Warranting a Denial of Discharge Pursuant to 11 U.S.C. § 722(a)(4)(A).**

In an action pursuant to § 727(a)(4)(A), once the plaintiff has made a *prima facia* case, the burden shifts to the debtor to provide satisfactory evidence to rebut the allegations. *Farouki v. Emirates Bank Int'l. Ltd.*, 14 F.3d 244, 250 (4th Cir. 1994). Bankruptcy debtors are cautioned not to "play fast and loose with . . . the reality of their affairs" and to put forth "complete, truthful, and reliable information . . . at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction." *Nat'l Post Office Mail Handlers, Watchmen, Messengers & Group Leaders Division v. Johnson (In re Johnson)*, 139 B.R. 163, 166 (Bankr. E.D.Va. 1992) (citing *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987)). Thus, the fundamental purpose of § 727(a)(4)(A) is to ensure that the trustee and creditors have accurate information without having to conduct costly investigations. *In re Song*, 2011 WL 6934462 (9th Cir. B.A.P. Sept. 30, 2011) (citing *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010)). Defendant has pointed to nothing in the Bankruptcy Code or case law that requires a bankruptcy trustee to litigate disputes as to a debtor's disclosures in order to obtain accurate information.

The Debtor defends against his decision not to disclose the multiple transfers of his Lawsuit Proceeds to his wife's checking accounts on the grounds that those transfers reflected the ordinary course of his financial affairs. Opp. at 7; Ex. C, Second Decl., ¶ 11. If so, the Debtor's ordinary course transactions have included the type of conveyances that have been condemned as fraudulent to creditors and, therefore, avoidable, since the enactment of the Statute of 13 Eliz. 1, c. 5 (1570) centuries ago. *See, e.g.*, N.C. Gen. Stat., article 3A, cmt. (explaining the origins of North Carolina's version of the Uniform Fraudulent Transfer Act); N.C. Gen.

8

State. § 39-23.4. The Debtor's argument that the transfers to Dianna Jenkins were not "absolute," Opp. at 8, is but a further reflection of a fraudulent transfer scheme. *See In re Arnold*, 2009 WL 5217056 at *4 (Bankr. M.D.N.C. Dec. 30, 2009) (setting out certain badges of fraud including a family relationship between the debtor and the transferee and the debtor's retention of possession, benefit or use of the property transferred); N.C. Gen. Stat. § 39-23.4(b)(1)&(2)(same). Nevertheless, accepting *arguendo* that the Debtor was not required to list the transfers to Dianna Jenkins in Question 10 of his SOFA, Plaintiffs maintain that the third parties to whom those funds were subsequently transferred should have been disclosed. They were not.

It is not clear what constitutes the ordinary course of the Debtor's financial affairs. Schedule J to the Debtor's Bankruptcy Papers indicates monthly expenses for such items as rent, utilities and credit cards. Ex. T at 17. However, the Debtor did not list any creditors relative to common household expenses on his Schedule F in his Bankruptcy Papers or his Amended Bankruptcy Papers. *Id.* at 13; Ex. U at 7; & Ex. V at 4. Moreover, both the Debtor and his wife have stated affirmatively that the Debtor "spent" his Lawsuit Proceeds, leading to an inference that the transfers to Dianna Jenkins' Bank Accounts were not made for the purpose of paying household expenses. Opp. at 8; Ex. B, First Decl., ¶ 7; Ex. C, Second Decl., ¶ 7; Br., Ex. Q.

The Debtor's pre-petition legal professionals received payments on contingency fee contracts pre-petition that were not disclosed in either Question 3 or Question 10 of the SOFA.[7] Br. at 6, Ex. F-4 & F-7. The Debtor argues that he was not required to list such payments in Question 3 because they reflected contemporaneous exchanges. Opp. at 8-9. Thus, the Debtor

---

[7] In the Debtor's Second Declaration, he denies that he made "any payments to any creditor that exceeded an aggregate value of $599.99 within 90 days of the Petition date." Opp., Ex. C, Second Decl., ¶ 12. This statement is contradicted by the documentation provided by LeLiever which shows payments to LeLiever and Kovaleski of $4,640.00 and $3,225.00, respectively, within 90 days of the Petition Date. Br. at 6-7 & Exs. F-4 & F-7.

would equate payment of professional fees pursuant to contingency fee contracts with point-of-sale transactions at a convenience store.[8]

A debtor who does not disclose transfers on the debtor's SOFA can be denied a discharge. *In re Oscarson*, 2008 WL 2700000 (Bankr. N.D. Ill. July 2, 2008) (holding that the debtor had made a false oath when he failed to disclose checks to his wife's sole account in Question 10 of his statement of financial affairs). When the Debtor filed his Bankruptcy Papers, he did so under penalty of perjury as to the representations therein. Ex. T at 18, 30 & 40. With each amendment to his Bankruptcy Papers, the Debtor again signed an oath indicating that they were "true and correct." Ex. U at 8; Ex. V at 5 & 18; Exhibit CC at 7. Because of the material omissions to those documents, each filing reflected a false oath on the part of the Debtor. That those false oaths were not inadvertent is evident in the arguments that the Debtor has presented in defense of his omissions. *See, e.g.*, Opp. at 7-9; Br., Ex. G at 5-6. The only remaining question, therefore, is whether the Debtor's material omissions reflected an intent to deceive.

A debtor's reckless indifference or disregard for the truth when coupled with a pattern of omissions of material information may lead to an inference of fraud. *Song*, 2011 WL 6934462 at *6 (citing *Garcia v. Coombs (In re Coombs)*, 193 B.R. 557, 565 (Bankr. S.D. Cal. 1996)). Here the Debtor has displayed more than a reckless indifference as to his Bankruptcy Papers and Amended Bankruptcy Papers—he has willfully withheld material information about substantial transfers made before the Petition Date—the same information that he had avoided providing to Federated pre-petition. Viewed through the lens of the Debtor's history of resistance to producing any financial records to Federated pre-petition, his post-petition refusal to disclose

---

[8] The Debtor made a similar argument with respect to utility providers as an attempt to excuse not listing such creditors on his Schedule F (Br., Ex. G at 5), notwithstanding that such services are generally billed in arrears.

10

transfers, payments to creditors, and the like reflect an intent to deceive by withholding material information regarding his financial affairs, in particular, the disposition of his Lawsuit Proceeds.

The Debtor hangs his arguments on mis-interpretations of what the Official Forms require rather that on any disputed question of material fact that would preclude summary judgment as to the false oaths reflected in the Debtor's Bankruptcy Papers and Amended Bankruptcy Papers. Opp. at 7-9. Plaintiffs are entitled to judgment as a matter of law on their § 727(a)(4)(A) claim.

C. **The Debtor's Discharge Should Be Denied for His Failure to Preserve and Provide Recorded Information.**

The Debtor argues he should not be denied of discharge based on 11 U.S.C. § 727(a)(3). "The purpose of this section is to give a creditor and the court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite of a discharge." *In re Henderson*, 423 B.R. 598, 616 (Bankr. N.D.N.Y. 2010) (quoting *Bay View Laundry, Inc. v. Artura (In re Artura)*, 165 B.R. 12, 15 (Bankr. E.D.N.Y. 1994) (citations omitted)). The determination of whether a debtor has maintained adequate records is particularly fact intensive and must be decided on a case by case basis. *Id.* at 617 (citing *In re Underhill*, 82 F.2d 258 (2d Cir.), *cert. denied*, 299 U.S. 546 (1936)). Courts take into account the debtor's occupation, education, experience and sophistication in the analysis of a § 727(a)(3) claim. *Id.*

Given the Debtor's experience in asserting legal claims based on violations of consumer protection statutes throughout the two years before the Petition Date, his failure to keep records as to potential claims supports denial of his discharge. The Debtor has demonstrated a sophisticated understanding of what information would be required in order to pursue his tort claims. *See, e.g.*, Ex. W at 24 (noting that the Debtor recorded his phone calls). Thus, the

11

Debtor's claim that he lacks any information as to the basis for the tort claims he listed as assets is belied by his past experience litigating such claims. *In re Baxter*, 96 B.R. 58, 61 (Bankr. E.D.Va. 1989) (holding a debtor-accountant to a higher standard as to record-keeping in denying discharge). Accordingly, Plaintiffs Motion should be granted as to their § 727(a)(3) claim.

### IV.   CONCLUSION

As explained in the Brief and further expanded herein, Plaintiffs are entitled to entry of summary judgment with respect to their claims pursuant to 11 U.S.C. §§ 727(a)(2), (2)(3) and (a)(4)(A).

This is the 18th day of February, 2013.

*/s/ A. Cotten Wright*
A. Cotten Wright (State Bar No. 28162)
Grier Furr & Crisp, PA
101 N. Tryon St., Suite 1240
Charlotte, NC  28246
Phone:  704.375.3720
Fax:  704.332.0215  Fax
cwright@grierlaw.com

*Attorneys for the Trustee, James T. Ward, Sr.*

*/s/ Linda W. Simpson*
Linda W. Simpson (State Bar No. 12596)
402 West Trade Street, Suite 200
Charlotte, NC 28202
Phone: (704) 332-7587
Fax: (704) 344-6666
linda_simpson@ncwba.uscourts.gov

*United States Bankruptcy Administrator*

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division

| | |
|---|---|
| In re:<br>    Matthew Alan Jenkins,<br>    d/b/a Shephard Service Company,<br><br>                          Debtor. | Case No. 12-50413<br><br>Chapter 7 |
| James T. Ward, Sr., Trustee, and Linda Simpson, United States Bankruptcy Administrator,<br><br>                         Plaintiffs,<br><br>v.<br><br>Matthew Alan Jenkins,<br><br>                         Defendant. | Adversary Proceeding 12-3223 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the *Plaintiffs' Reply to Debtor's Opposition to Motion for Summary Judgment* were served on the following parties by email, electronic service and by U. S. mail, postage prepaid and addressed as follows:

U.S. Bankruptcy Administrator
402 W. Trade St., Ste. 200
Charlotte, NC 28202-1669
*Via electronic service*

Matthew Alan Jenkins
14833 Mansa Dr.
La Mirada, CA 90638
shephard68@yahoo.com

This is the 18th of February, 2013.

                                          */s/ A. Cotten Wright*
                                          Grier Furr & Crisp, PA
                                          101 N. Tryon St., Suite 1240
                                          Charlotte, NC 28246