

```
FILED & JUDGMENT ENTERED
     Steven T. Salata


     Mar  13  2013


  Clerk, U.S. Bankruptcy Court
Western District of North Carolina
```

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

| | |
|---|---|
| In re:<br>    Matthew Alan Jenkins,<br>    d/b/a Shephard Service Company,<br><br>                           Debtor. | Case No. 12-50413<br><br>Chapter 7 |
| James T. Ward, Sr., Trustee, and Linda Simpson, United States Bankruptcy Administrator,<br><br>                        Plaintiffs,<br><br>v.<br><br>Matthew Alan Jenkins,<br><br>                      Defendant. | Adversary Proceeding 12-3223 |

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

This matter came on for hearing on February 27, 2013 on the *Plaintiffs' Motion for Summary Judgment* (the "Motion") (D.E. 9) and supporting brief (D.E. 11) filed on January 22, 2013 by James T. Ward, chapter 7 trustee (the "Trustee") for Matthew Alan Jenkins (the "Defendant" or the "Debtor"), and Linda Simpson, the United States Bankruptcy Administrator for the Western District of North Carolina (the "Bankruptcy Administrator" and, together with the Trustee, the "Plaintiffs"), through counsel; the *Defendant's Opposition to Trustee's Motion*

*for Summary Judgment* (the "Opposition") filed by Defendant (D.E. 16); and *Plaintiffs' Reply to Debtor's Opposition to Motion for Summary Judgment* (D.E. 18). Present at the hearing were the Trustee and his attorney, A. Cotten Wright, and the Bankruptcy Administrator. Defendant did not attend the hearing or otherwise appear.

The Court has reviewed the pleadings, the exhibits thereto, the affidavits and declarations submitted in support of the pleadings, and other matters of record in this adversary proceeding (the "Adversary Proceeding") and in the Defendant's bankruptcy case (the "Bankruptcy Case"). Based on consideration of the same, as well as the parties' legal arguments and the argument made at the hearing, the Court has determined that the Motion should be allowed and hereby makes the following findings of fact and conclusions of law.

## I.    FACTUAL BACKGROUND

On April 11, 2012 (the "Petition Date"), Defendant filed a voluntary petition for relief pursuant to chapter 7 of the Bankruptcy Code listing only one creditor, Federated Financial Corporation of America ("Federated"). In his bankruptcy papers filed on April 24, 2012 (the "Bankruptcy Papers"), the Debtor scheduled a general unsecured claim for Federated in the amount of $40,000.00.

### A.    The Federated Matter.

Before the Petition Date, on March 16, 2010, Federated was awarded a judgment against the Debtor (the "Federated Judgment") by the Wake County, North Carolina, Superior Court in the case of *Federated Financial Corporation of America v. Matt Jenkins, individually and d/b/a Shephard Service Company*, Case No. 09-CVS-002084 (the "Federated Matter"). The Debtor filed an unsuccessful appeal of the Federated Judgment. *Federated Fin. Corp. of Am. v. Jenkins*, __ N.C.App. __, 719 S.E.2d 48 (N.C.App. 2011). Upon being ordered to produce documents

relating to his assets to Federated, the Debtor filed a second appeal in the Federated Matter, which was also unsuccessful. *Federated Fin. Corp. of Am. v. Jenkins*, __ N.C.App. __, 721 S.E.2d 409 (N.C. App. 2012). Meanwhile, the Debtor signed two separate agreements obligating himself to pay his pre-petition litigation attorney, W. Andrew LeLiever ("LeLiever") a total of $40,000.00 to pursue the appeals in the Federated Matter. On September 21, 2011, the Debtor filed a complaint against Federated and one of its lawyers in the United States District Court for the Eastern District of North Carolina alleging that Federated had violated the Fair Debt Collection Practices Act in its attempts to collect the Federated Judgment.

The day before the Petition was filed, on April 10, 2012, The Honorable Donald W. Stephens entered an *Order to Show Cause Why Matt Jenkins Should Not Be Held in Criminal Contempt of Court and Order Forbidding Transfer of Defendant's Property* ("Judge Stephens' Order") in the Federated Matter. Judge Stephens' Order included a finding that the evidence submitted to the court indicated that the Debtor had received close to $400,000.00 in settlement proceeds from lawsuits that he had filed since 2008 (the "Lawsuit Proceeds"). Judge Stephens' Order provided that the Debtor was not to transfer any of his Lawsuit Proceeds, and that he was to appear before the court on April 12, 2012 with copies of his wife's bank records and the records of any other account in which he had deposited Lawsuit Proceeds since January 1, 2008.

In this Adversary Proceeding Defendant filed declarations by LeLiever and himself stating that he intended to pay the Federated Judgment. LeLiever's declaration states that LeLiever offered a payment plan to one of Federated's attorneys on more than one occasion, but those offers were declined. LeLiever and the Defendant did not attach any supporting documentation of their communications with Federated to their declarations.

After filing his Petition on April 11, 2012, the Debtor appeared before Judge Stephens on

3

April 12, 2012. After that hearing, Judge Stephens entered an Order finding that the Debtor was not in criminal contempt of court and acknowledging that the Federated Matter was stayed pending the outcome of the Debtor's bankruptcy case.

In compliance with this Court's Orders,[1] Dianna Jenkins provided copies of bank statements on two bank accounts (the "Bank Statements"), a checking account at Branch Banking and Trust Company, account number xxxx0440 (the "BB&T Account"), and a checking account at Wells Fargo Bank, formerly Wachovia Bank, account number xxxx8590 (the "Wells Fargo Account," and together with the BB&T Account, the "Bank Accounts"). Through a series of Orders entered in the Bankruptcy Case,[2] the Trustee obtained certain documentation from LeLiever, including information as to various settlements of the Debtor's lawsuits, records from LeLiever's trust account, and copies of checks that LeLiever issued to Dianna Jenkins for Lawsuit Proceeds (the "LeLiever Documentation"). The Debtor's other pre-petition litigation attorney, J. Blake Norman, also complied with an Order to turn over records regarding disbursement of the Lawsuit Proceeds (Bankr. D.E. 51), including trust account information (the "Norman Documentation"). The Bank Statements, LeLiever Documentation and Norman Documentation show that Lawsuit Proceeds totaling more than $200,000.00 were transferred to Dianna Jenkins during the period between entry of the Federated Judgment and the Petition Date.

### B. The Defendant's Bankruptcy Papers.

On April 24, 2012, the Debtor filed his Bankruptcy Papers listing, in addition to Federated, claims for the Internal Revenue Service and the North Carolina Department of

---

[1] See the *Temporary Restraining Order* and the *Preliminary Injunction* entered in AP #12-5033 on April 20, 2012 and May 4, 2012, respectively.

[2] These Orders are: Bankr. D.E. 39 (*Order Granting Trustee's Motion for Turnover of Documents Relating to Litigation Claims Asserted by the Debtor*), Bankr. D.E. 58 (*Order Granting Ex Parte Motion for Rule 2004 Examination of and Production of Documents By W. Andrew LeLiever and LeLiever Law, P.A.*) and Bankr. D.E. 127 (*Order Granting Motion to Compel*).

Revenue. In his statement of financial affairs (the "SOFA"), the Debtor indicated that he had received $235,278.00 in Lawsuit Proceeds within two years of his bankruptcy filing. The Bankruptcy Papers do not provide any information as to the disposition of those funds.

The Debtor listed among his personal property assets in the Bankruptcy Papers possible tort actions against 21 putative defendants and possible breach claims against an additional six putative defendants (together, the "Scheduled Causes of Action"). The Bankruptcy Papers do not indicate addresses for the putative defendants of the Scheduled Causes of Action, and the Debtor has not provided that information.

The Debtor subsequently amended his Bankruptcy Papers three times as follows:

    1.    On April 30, 2012, the Debtor filed an amendment: adding to Schedule F a claim in the amount of $97,500.00 for LeLiever; scheduling as an asset on Schedule B $5,000.00 in Lawsuit Proceeds being held in trust by LeLiever; and amending Schedule C to claim an exemption in the $5,000.00 added to Schedule B.

    2.    On September 14, 2012, the Debtor filed an amendment: reducing the amount of the claim scheduled for LeLiever on Schedule F to $56,500.00; reducing the amount of the Lawsuit Proceeds disclosed in his SOFA to $226,031.33; and disclosing gifts to charities.

    3.    On October 19, 2012, the Debtor filed an amendment disclosing on Schedule B that LeLiever was holding $715.70 in trust as of the Petition Date.

The LeLiever Documentation shows that, in the 90 days before the Petition Date, LeLiever was paid fees totaling approximately $4,640.00 from the Debtor's gross Lawsuit Proceeds and an additional $3,225.00 in fees was paid to a paralegal, Don Kovaleski

5

("Kovaleski"). The Bankruptcy Papers and amendments do not disclose those payments.

The Debtor's Bankruptcy Papers and amendments do not disclose the Transfers to Dianna Jenkins' Bank Accounts, transfers to any third party, or payments made to creditors within 90 days of the Petition Date. The Bankruptcy Papers and amendments also do not disclose any interest that the Debtor held in Dianna Jenkins' Bank Accounts or any funds in those accounts. Further, the Debtor's Bankruptcy Papers and amendments do not list any household creditors, although Schedule J to the Debtor's Bankruptcy Papers indicates monthly expenses for such items as rent and utilities.

### C.   Post-Petition Events.

On May 14, 2012, the Debtor appeared and was sworn at the meeting of creditors (the "Creditors' Meeting") in the Bankruptcy Case. The Debtor testified that his Lawsuit Proceeds were deposited to his wife's bank account before the Petition Date (the "Pre-Petition Transfers"). The Creditors' Meeting was continued, and on July 19, 2012, the Debtor appeared by telephone from California and testified that he was not an owner of the BB&T Account but was an authorized user of that account. The Debtor's testimony on this point was confirmed by correspondence from BB&T provided by Dianna Jenkins. The Debtor also testified that he had access to the Lawsuit Proceeds transferred to the Wells Fargo Account through permissive use of Dianna Jenkins' ATM card. The Debtor testified further that he directed LeLiever to transfer the funds remaining in LeLiever's trust account as of the Petition Date to Dianna Jenkins after the Petition Date (the "Post-Petition Transfer," and with the Pre-Petition Transfers, the "Transfers").

During the July 19, 2012 Creditors' Meeting, counsel for the Trustee requested additional information regarding the tort claims included in the Scheduled Causes of Action, but the Debtor indicated that he would not have addresses for those putative defendants. The Debtor testified

6

that the alleged tort claim defendants had placed calls to his cell phone without his consent or had placed calls for third parties to his cell phone; however, he did not know whether or not he had recordings of the calls from the putative tort defendants. With respect to the breach claims included in the Scheduled Causes of Action, the Debtor testified that he believed that the putative attorney-defendants had violated confidentiality provisions relative to his litigation settlements.

When questioned about his relationship with Kovaleski, the Debtor testified that Kovaleski is LeLiever's paralegal. Contradicting this testimony, LeLiever has stated on the record before this Court that it was the Debtor who requested Kovaleski's involvement with his consumer protection litigation. The Debtor was asked to provide documentation as to his relationship with Kovaleski but refused to do so.

On July 25, 2012, the Debtor emailed correspondence to the Trustee's attorney that included a summary of his net Lawsuit Proceeds. The Debtor stated that the Transfers to Dianna Jenkins did not reflect payment for any goods or services or for any extensions of credit or money loaned. Instead, the Debtor asserted that the Transfers to Dianna Jenkins reflected a conduit to deposit funds into a marital account, and that he did not lose ownership or interest in the Lawsuit Proceeds that were transferred. In his Opposition, the Debtor argued that the Transfers reflected his ordinary course of business or financial affairs. He has admitted that he maintained control over and actually spent the Lawsuit Proceeds subsequent to their being deposited to the Bank Accounts. The Debtor has taken the position that payments made to his professionals or such entities as utility providers reflected contemporaneous exchanges that he was not required to disclose in his SOFA.

The Debtor's summary of the Lawsuit Proceeds, the Bank Statements, the LeLiever Documentation and the Norman Documentation show that the Debtor caused at least $64,566.00

to be transferred to Dianna Jenkins within one year of the Petition Date and an additional $715.70 to be transferred to her after the Petition Date.

### III.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the matters presented to the Court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. BANKR. P. 7056 (making FED. R. CIV. P. 56(c) applicable in bankruptcy cases). In considering a motion for summary judgment, the court must construe the "facts and inferences drawn therefrom in the light most favorable to the nonmoving party." *Seabulk Offshore, Ltd. V. American Home Assur. Co.*, 377 F.3d 408, 418 (4th Cir. 2004) (citing *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001)). With respect to motions for summary judgment, the United States Supreme Court has instructed that factual disputes are "material" only to the extent that they may affect the outcome of the litigation, and they are "genuine" only if the evidence is sufficient for a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Bassett Seamless Guttering, Inc. v. GutterGuard, LLC*, 501 F.Supp.2d 738, 741 (M.D.N.C. 2007) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). Instead, the nonmoving party must come forward with "specific facts showing there is a *genuine issue for trial.*" *Id.* (emphasis in original).

Applying this standard, Plaintiffs are entitled to summary judgment as to each of their causes of action.

## IV.   DISCUSSION

### A.   The Complaint was Timely.

In his Opposition to the Motion, Defendant argued that the complaint (the "Complaint") in this Adversary Proceeding was not timely and that the Court lacked authority to extend the deadline for objecting to discharge in his bankruptcy case. Rule 4004(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides explicit authority for bankruptcy courts to extend the deadline for objecting to a debtor's discharge. Fed. R. Bankr. P. 4004(b). Therefore, the Court had authority to extend the deadline for objecting to discharge in this case.

On June 18, 2012, the Plaintiffs in this case filed a joint motion requesting an extension of the deadline for objecting to Defendant's discharge to 60 days after the conclusion of the meeting for creditors in Defendant's Bankruptcy Case (the "Motion to Extend"). (Bankr. D.E. 90). The Debtor did not file an objection to the Motion to Extend and did not appear at the hearing on that motion. On July 2, 2012, the Court entered an Order granting the Motion to Extend and extending the deadline for objecting to discharge to 60 days after adjournment of the meeting of creditors. (Bankr. D.E. 125).

Also on July 2, 2012, the Court ordered the Debtor to appear for a continued Creditors' Meeting on July 11, 2012 and failing that, to appear at a show cause hearing later the same date. (Bankr. D.E. 126). When the Debtor did not so appear, the Court entered an Order finding that the Debtor was in contempt but permitting him to purge his contempt by attending a continued creditors' meeting on one of two alternative dates. (Bankr. D.E. 129). The Debtor subsequently appeared by phone at a continued Creditors' Meeting on July 19, 2012. The Creditors' Meeting was not adjourned on that date but rather continued as noted in the transcript.

9

As indicated on the docket report for the Bankruptcy Case, as of the date of the Complaint, September 26, 2012, the Trustee had not posted a notice stating that the meeting of creditors had been adjourned. Accordingly, the deadline for filing a Complaint as set out in the Court's July 2, 2012 Order had not run when the Complaint was filed.

For these reasons, the Court holds that the Complaint in this case was timely.

### B. Summary Judgment is Appropriate with Respect to Plaintiff's Claim under 11 U.S.C. § 727(a)(2).

Section 727(a)(2) of the Bankruptcy Code provides that a bankruptcy discharge will be denied when:

> a debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under [the Bankruptcy Code], has transferred, removed, destroyed, mutilated or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed—
>
> (A) property of the debtor, within one year before the date of the filing of the petition;
> (B) property of the estate, after the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2). The elements that must be established to support a § 727(a)(2)(A) claim are that the debtor (1) transferred or concealed, (2) the debtor's property, (3) with the intent to hinder, delay or defraud a creditor, (4) within one year before the date that the bankruptcy petition was filed. *In re Abdelaziz*, 2012 WL 359756 at *2 (Bankr. M.D.N.C. Feb. 2, 2012). The elements that must be shown to prove an action under § 727(a)(2)(B) are: (1) a transfer of property; (2) belonging to the debtor; (3) with intent to hinder, delay, or defraud a creditor or officer of the estate; (4) after the date of the filing of the petition. *See In re Golob*, 252 B.R. 69, 78 (Bankr. E.D. Va. 2000).

As for the first element, the definition of the term "transfer" provided in the Bankruptcy Code includes "each mode, direct or indirect, absolute or conditional, voluntary or involuntary,

of disposing or parting with (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(D). Congress intended that this definition be broad, and that it include deposits to bank accounts. *In re Pulliam*, 279 B.R. 916, 920 (Bankr. M.D. Ga. 2002) (quoting S.Rep. No. 95-989, 95th Cong. 2d Sess. 27 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5813). The facts of this case show that the Debtor has admitted that his Lawsuit Proceeds were deposited to Dianna Jenkins' Bank Accounts both before and after the Petition Date. Dianna Jenkins' receipt of the Lawsuit Proceeds is documented in the Bank Statements as well as in the LeLiever Documentation and the Norman Documentation. Each deposit of Lawsuit Proceeds to one of the Bank Accounts reflected a § 101(54)(D) transfer.

With respect to the second element of a § 727(a)(2) claim, the Debtor has acknowledged that he collected $226,031.33 in Lawsuit Proceeds resulting from actions brought in his name. As indicated on the Debtor's SOFA, those funds reflected his property.

The timing of the Transfers was such that Lawsuit Proceeds totaling $64,566.00 were transferred to Dianna Jenkins within one year of the Petition Date, establishing the fourth element of a claim under § 727(a)(2)(A). With respect to the third § 727(a)(2)(B) element, the Post-Petition Transfer was made after the Petition Date.

As for the third element, the Court concludes that the Transfers were made with the "intent to hinder, delay or defraud a creditor." *Abdelaziz*, 2012 WL 359756 at *2. Courts are permitted to draw inferences from the facts and circumstances of a debtor's case evident in certain badges of fraud in order to find intent. *See Zanderman, Inc. v. Sandoval*, 153 F.3d 722, 1998 WL 497475 at *2 (4th Cir. 1998) (unpublished) (citing *In re Woodfield*, 978 F.2d 516, 519 (9th Cir. 1992)). In this case, application of the badges of fraud reveals circumstantial evidence of the Debtor's intent to hinder, delay or defraud Federated as well as any other creditor holding

a pre-petition claim.

In *In re Arnold*, 2009 WL 5217056 (Bankr. M.D.N.C. Dec. 30, 2009), the court listed the following badges of fraud: (1) family, friendship or insider relationships between the parties; (2) the debtor's retention of possession, benefit or use of the property in question; (3) the lack or inadequacy of consideration for the transfer; (4) the debtor's financial condition before and after the transfer; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the events and transactions under inquiry; (7) the debtor's attempt to keep the transfer a secret; and (8) the proximity of the transfer to the debtor's bankruptcy filing. 2009 WL 5217056 at *4. The presence of even one factor can necessitate the court's finding that the debtor possessed the requisite fraudulent intent. *Zanderman* 1998 WL 497475 at *2 (citing *In re Penner*, 107 B.R. 171, 175 (Bankr. N.D. Ind. 1989) (citations omitted)). Moreover, a debtor's transfer of an interest in property to the debtor's spouse for no consideration satisfies a number of the enumerated badges of fraud, particularly when the transfer is not disclosed in the debtor's bankruptcy papers. *In re Matus*, 303 B.R. 660, 673 (Bankr. N.D. Ga. 2004). For example, in *Matus*, the court denied discharge to a debtor who transferred a half-interest in his home to his wife while continuing to live in the home and during a period that he was involved in state court litigation. *Id.*

In this case, Defendant has made repeated, affirmative statements that demonstrate his intent based on application of the badges of fraud. In papers filed with the Court, the Debtor has stated that all of his income has been deposited to his wife's Bank Accounts for years, admitting to the first badge of fraud relative to a family relationship. The Debtor also has acknowledged that he wrote checks on the BB&T Account as an authorized user and made permissive

12

withdrawals from both of the Bank Accounts after the Lawsuit Proceeds were deposited to those accounts, showing the second badge of fraud.

The Debtor has stated that he received no consideration for the Transfers, explaining that they were not made in connection with the payment of any obligations owed to Dianna Jenkins, reflecting the third badge of fraud. Because the Lawsuit Proceeds that were transferred constituted the Debtor's only income, the fourth badge of fraud with respect to the Debtor's financial condition before and after the Transfers is at play here.

Defendant's course of conduct in the year before the Petition Date reflects evidence of his intentions with respect to the Federated Judgment. During that period, Defendant appealed an order requiring him to produce records related to his assets, and he brought a collateral attack against Federated and its attorney by suing them in District Court. Defendant also obligated himself to pay LeLiever as much to prosecute appeals in the Federated Matter as the amount of the Federated Judgment itself. Defendant's behavior shows he at least intended to delay Federated's collection efforts, if not hinder Federated's ability to collect. Thus, the fifth badge of fraud is satisfied here.

With respect to the sixth badge of fraud relative to the general chronology of events and transactions, during the year before the Petition Date, the Debtor resisted Federated's discovery efforts, and the Debtor challenged Federated's collection efforts in a lawsuit filed in District Court. The seventh badge of fraud is illustrated in the Debtor's failure to turn over records regarding his assets before the Petition Date, and his refusal to disclose the Transfers in his Bankruptcy Papers and amendments since the Petition Date. In this manner, Defendant sought to conceal the Transfers.

The Transfers continued until shortly before the Petition Date, and an additional Transfer

was made after the Petition Date, demonstrating the eighth badge of fraud.

Finally, the Debtor's conduct throughout his Bankruptcy Case has revealed that his purpose is to delay and defraud his creditors. Before the Petition Date, the Debtor made his living by filing lawsuits and collecting settlement proceeds. Although the Debtor has proceeded in this Court *pro se*, he has shown that he has some ability to read and understand the law. Post-petition, the Debtor has used his skills in a manner that has been counterproductive to the administration of his case. For example, shortly after filing his Petition, the Debtor contacted the Court to state that he planned to voluntarily dismiss his case. After the Court entered an Order holding that the Debtor's case would not be dismissed based on any failure by the Debtor to file his bankruptcy papers,[3] the Debtor filed a motion requesting that his Bankruptcy Case be dismissed as abusive. And only after the Court found the Debtor in contempt did he appear for a continued meeting of creditors. These are just some examples of the ways in which the Debtor has attempted to delay and hinder administration of his case.

In sum, Pre-Petition Transfers to Dianna Jenkins were made in the year before the Petition Date, and after the Petition Date, the Debtor made the Post-Petition Transfer. As was the case in *Arnold*, there can be no coincidence that the Pre-Petition Transfers prevented Federated from executing on the Federated Judgment. *Arnold*, 2009 WL 5217056 at *5. Application of the badges of fraud leads to the conclusion that the Debtor made the Transfers, including the Post-Petition Transfer, with "with intent to hinder, delay, or defraud a creditor or an officer of the estate." For these reasons, the Debtor's discharge will be denied pursuant to § 727(a)(2).

### C. Summary Judgment is Appropriate with Respect to Plaintiff's Claim under 11 U.S.C. § 727(a)(4)(A).

---

[3] On February 8, 2010, the Debtor filed a petition for relief pursuant to chapter 13 of the Bankruptcy Code, but that case was dismissed for the Debtor's failure to file his bankruptcy schedules. *See* Case No. 10-50146.

14

Section § 727(a)(4) of the Bankruptcy Code provides that a bankruptcy discharge will be denied if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C.. § 727(a)(4)(A). This provision "essentially codifies a fundamental policy of the Bankruptcy Code—that only honest, unfortunate debtors receive a discharge, and thus the benefit of a fresh start." *Matus*, 303 B.R. at 675.

A debtor's petition, schedules and SOFA are executed under oath, and the Bankruptcy Forms warn the debtor that they are signed under penalty of perjury. The Bankruptcy Code, Bankruptcy Rules and Bankruptcy Forms are designed "to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction." *In re Bratcher*, 289 B.R. 205, 218 (Bankr. M.D. Fla. 2003). That is, the trustee and the debtor's creditors are not required to "engage in a laborious tug-of-war to drag the simple truth into the glare of daylight." *Id.* (citing *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 112 (1st Cir. 1987)).

A debtor's failure to disclose assets or transactions in the debtor's schedules or SOFA may warrant denial of discharge pursuant to § 727(a)(4). *In re Michael*, 452 B.R. 908, 919 (Bankr. M.D.N.C. 2011) (citations omitted). In the Fourth Circuit, a false oath must be related to a matter that is material to the debtor's case. *In re Pepper*, 2011 WL 5288737 at *2 (Bankr. M.D.N.C. Nov. 2, 2011) (citing *Williamson v. Fireman's Fund Inc. Co.*, 828 F.2d 249, 251 (4th Cir. 1987)).

In denying a debtor's discharge for making a false oath, courts have found that

> [t]he requisite intent to deceive exists where a debtor, ***in the first instance*** of filing a petition, schedules, or statement of financial affairs, makes statements—excluding honest mistakes—that are inconsistent or incompatible with his own knowledge and information. . . . Accordingly, if the [debtor's] schedules and statements as filed contained materially

15

incorrect information, then [] discharge should be denied.

*Michael*, 452 B.R. at 919 (citing *In re McLaren*, 236 B.R. 882, 895 (Bankr. D.N.D. 1999)) (emphasis added). Other courts have concluded that a "pattern of concealment or nondisclosure" can be sufficient to support an inference of the requisite intent under § 727(a)(4). *In re Poffenberger*, 471 B.R. 807, 819 (Bankr. D.Md. 2012) (quoting *Hatton v. Spencer (In re Hatton)*, 204 B.R. 477, 483 (E.D.Va. 1997) (further citation omitted). Further, a "reckless indifference to the truth" works as the "functional equivalent of fraud," and a debtor's subsequent disclosure does not expunge a prior false oath. *Id.* (citing *Rosenbam v. Kilson (Matter of Kilson)*, 83 B.R. 198, 203 (Bankr. D. Conn. 1988)).

In this case, the most glaring omission in the Debtor's Bankruptcy Papers and amendments is his failure to disclose the disposition of the Lawsuit Proceeds, regardless of whether those funds were transferred to Dianna Jenkins or other third parties. The Debtor has justified not disclosing the Transfers by explaining that they were not in exchange for any value provided by Dianna Jenkins. The Debtor did not disclose any interest in Dianna Jenkins' Bank Accounts or in the funds in those accounts. In addition, the Debtor did not disclose payments to LeLiever and Kovaleski that were made within 90 days of the Petition Date. Finally, it appears that the Debtor listed only selected creditors in his Bankruptcy Papers.

In an objection filed in the Bankruptcy Case on October 5, 2012, the Debtor argued that his failure to provide adequate information in his Bankruptcy Papers and amendments was the result of a good faith dispute with counsel for the Trustee. (Bankr. D.E. 147, ¶ 20). Contradicting that position in the same pleading, the Debtor asserted that it was the Trustee's "duty" to instruct the Debtor to amend his Bankruptcy Papers to disclose the funds that were the subject of the Post-Petition Transfer. *Id.* at ¶¶ 17-19. However, there is no provision in the

Bankruptcy Code or Bankruptcy Rules that permits debtors to shift the burden of ensuring the accuracy of their bankruptcy papers to the trustee.

The Court concludes that because the Debtor's Bankruptcy Papers and amendments thereto reflected false oaths, discharge will be denied pursuant to § 727(a)(4)(A).

### D.    Summary Judgment is Appropriate Pursuant to 11 U.S.C. § 727(a)(3).

Section 727(a)(3) provides that discharge may be denied when

> a debtor that has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under the circumstances of the case[.]

11 U.S.C. § 727(a)(3). Among other things, 11 U.S.C. § 521 requires debtors to "surrender to the trustee any recorded information, including books, documents, records, and papers relating to property of the estate." § 521(a)(4).

Here, the Debtor's Scheduled Causes of Action include tort claims against a list of putative defendants. However, the Debtor has testified that he does not know whether or not he has recordings of the calls that these potential defendants allegedly placed to his cell phone. He further testified that he does not have addresses for these putative defendants. Because the Debtor cannot provide any factual support for the causes of action listed in his Schedule B to the Trustee, the Trustee cannot administer those claims as estate assets. Given this lack of information, the Trustee was required to seek an Order from the Court preserving these and other causes of action for the benefit of the bankruptcy estate should the Debtor successfully pursue them after his case has been closed. Likewise, the Debtor has testified that he does not have copies of emails or other documentation of his relationship with Kovaleski. The Trustee has been unable to determine the nature of the Debtor's relationship with Kovaleski, including

whether the Debtor and Kovaleski operated as partners.

Because the Debtor has either not preserved records necessary to administer his case or has refused to turn those records over to the Trustee, the Debtor's discharge will be denied pursuant to § 727(a)(3).

## V.    CONCLUSION

In sum, Defendant has not raised a material question of fact that would preclude entry of summary judgment in Plaintiffs' favor. The Motion was supported by counsel's affidavit, and documentation obtained from the Defendant, his pre-petition litigation attorneys, and his wife, Dianna Jenkins. The combined effect of this documentation with the documentation on the record supports the Court's conclusion that the Defendant's discharge should be denied.

Given the Court's decision to grant the Motion, the need for a pre-trial conference in this Adversary Proceeding is moot.

IT IS, THEREFORE, ORDERED that:

1) The Complaint in this Adversary Proceeding was timely filed;

2) The Motion is GRANTED as to Plaintiffs' claim pursuant to 11 U.S.C. § 727(a)(2) and Defendant's discharge is DENIED on that basis;

3) The Motion is GRANTED as to Plaintiffs' claim pursuant to 11 U.S.C. § 727(a)(4)(A) and Defendant's discharge is DENIED on that basis

4) The Motion is GRANTED as to Plaintiffs' claim pursuant to 11 U.S.C. § 727(a)(3) and Defendant's discharge is DENIED on that basis; and

5) The pre-trial conference scheduled for March 13, 2013 is canceled as moot.

**This Order has been signed electronically. The judge's signature and court's seal appear at the top of the Order.**                                **United States Bankruptcy Court**